KERSTIN SWENSSON, Respondent, v. NEW YORK, ALBANY DESPATCH COMPANY, INC., Respondent, and WARD LA FRANCE TRUCK CORP., Appellant. YOLANDA TRIMBOLI, as Administratrix of the Estate of ANTHONY J. TRIMBOLI. Deceased.

Respondent, v. WARD LA FRANCE TRUCK CORP., Appellant. (Consolidated action.) — In a consolidated action to recover damages for personal injuries sustained by plaintiff Swensson and to recover damages for wrongful death of plaintiff Trimboli's intestate and for his conscious pain and suffering defendant Ward La France Truck Corp. appeals from a judgment entered on a jury verdict in favor of plaintiffs against it and in favor of defendant New York, Albany Despatch Co., Inc., against plaintiff Swensson and dismissing the cross complaint of defendant Ward La France against defendant Despatch Company. Appeal from the judgment insofar as it is in favor of respondent Despatch Company against respondent Swensson dismissed, with costs to respondent Despatch Company, payable by appellant. (*Nekris* v. *Yellen,* 302 N. Y. 626; *Glassman* v. *City of New York,* 284 App. Div. 1045.) Judgment insofar as it is in favor of respondents Swensson and Trimboli and against appellant reversed on the law and the facts, with one bill of costs to appellant, payable by said respondents, and complaints dismissed. The theory upon which the jury found in favor of respondents Trimboli and Swensson against appellant, a distributor of motor vehicles, was that it had not properly inspected and repaired the tractor which it delivered to respondent Despatch Company for trial by the latter in connection with the latter's prospective purchase of said tractor or a similar new vehicle. This finding of negligence was made upon the trial court's instruction to the jury that it was appellant's duty to " act as a person of ordinary prudence would have acted " and to " use due care in the handling of the tractor in question with regard to the examination or inspection made and with regard to the condition it was in at the time of its delivery to New York and Albany Despatch Company ", which instruction became the law of the case. The same day that the tractor was delivered to the said prospective purchaser, on October 23, 1952, it was driven by the latter's driver, the intestate, together with a loaded trailer attached to it, from New York City to Plattsburgh, a trip of about 325 miles, respondent Swenson accompanying him in the cab. The accident occurred the night of the following day, on the trip back from Plattsburgh toward New York City. On this return trip, a different loaded trailer was attached to the tractor, and the air hoses were hooked up by the witness Hamel, an employee of respondent Despatch Company. The intestate was again driving and Miss Swensson again accompanied him in the cab. The vehicle overturned on the highway after it had proceeded about 100 miles toward New York City. The testimony of Miss Swensson was that, immediately before the happening of the accident, the vehicle had been proceeding at the rate of about forty-five miles an hour, and the intestate applied both the air and emergency brakes, and that at the same time he said that " the air was gone "; and that the vehicle then proceeded downgrade, gained speed, skidded and turned over. The testimony of plaintiff Trimboli's witness, Cutler, a mechanic, was that, if the air brake had been in good condition, the vehicle should have stopped within fifteen or twenty feet if the brake had been " stepped on," that it is not good practice to put a tractor on the road without examination of the brake drum, and that examination of the brake drum cannot be made without removing the drum. As against this there was the testimony of a disinterested witness, Fiorillo, who had driven this tractor when it was owned by his employer over the period of about the first nine months of 1952, that when it was repossessed by appellant at the end of that period it was only nine months old and had been driven a total of about 18,000 miles, and was in perfect working condition; the testimony of appellant's mechanic, La Mothe, that, after repossession and on October 11,

1952, he tested it, including the brakes, both in appellant's shop and on the road — he admitted that he did not remove the brake drum to examine its interior, but said that good practice does not require that after only 18,000 miles, that he could and did examine its interior without removal, that he listened for air leaks and found none, that he checked the air pressure by the automatic gauge on the dashboard, that the tractor was equipped with a buzzer device to warn operators when the air pressure dropped below 60 pounds, so that they may slow down or stop in order to build up the pressure, and that, even if there were a slow leak " it would take quite a while " for the pressure to go down from 110 to 60 pounds, that he found the brake lining, which he viewed through the peephole in the brake drum, in "very good condition" and found nothing wrong with the air brakes and the emergency brake, except that he made a slight adjustment on the latter — that he tested it again on the road on October 23, 1952, the very day it was turned over to the prospective purchaser, on a 40-mile trip, through traffic; the testimony of Miss Swensson herself that she did not hear any buzzing sound before the accident, and that the tractor had made several stops during the trip to Plattsburgh; the testimony of the intestate's coemployee, Hamel, that he took the vehicle on a 130-mile trip after its arrival at Plattsburgh and before it started back toward New York City; the acknowledgement by the witness Cutler, the mechanic, that, if the vehicle made the several stops on the trip up to Plattsburgh, which Miss Swensson admitted as a fact, the brakes worked on those occasions; and the testimony of another disinterested witness, an eyewitness to the accident, that the tractor was on the soft shoulder alongside the highway when the trailer turned over and pulled the tractor with it. In our opinion there was no evidence from which findings could correctly be made that appellant was negligent with regard to examination or inspection of the tractor and that there was a causal relationship between the manner of the making of such examination or inspection and the happening of the accident. If we were not dismissing the complaints, we would have granted a new trial on the ground that the verdict was contrary to the weight of the credible evidence. Wenzel, Acting P. J., Murphy and Ughetta, JJ., concur; MacCrate and Beldock, JJ., concur in the dismissal of the appeal and in the reversal of the judgment but dissent as to the dismissal of the complaints and vote to grant a new trial on the ground that the verdict was against the weight of the evidence. [See *post,* p. 1159.]